IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TAMRA HELEN PARKER,              § <br> § <br> Plaintiff,              § <br> § <br> v.              § <br> § <br> KILOLO KIJAKAZI,[1]              § <br> *Acting Commissioner of Social Security*,              § <br> § <br> Defendant.              § | Civil Action No. 4:21-cv-219-SDJ-KPJ |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tamra Helen Parker ("Ms. Parker") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

### I.  APPLICABLE LAW

#### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

B.   **Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.   BACKGROUND AND PROCEDURAL HISTORY

Ms. Parker was born in 1965, completed an associates degree, and last worked as a cashier at a gift shop.[4] *See* Tr. 18, 32. On January 26, 2018, Ms. Parker filed an application for Supplemental Security Income ("SSI"). *See* Tr. 188–96. In her application, Ms. Parker alleged disability since June 1, 2017, due to "[s]chizophrenia, [d]epression, [t]hyroid [p]roblem, and bipolar [disorder]." *See* Tr. 47. The Social Security Administration ("SSA") denied Ms. Parker's claim initially on May 22, 2018, and upon reconsideration on September 18, 2018. *See* Tr. 79–82, 89–91. Thereafter, Ms. Parker filed a written request for a hearing. *See* Tr. 92–95. On March 30, 2020, Administrative Law Judge Ralph F. Shilling (the "ALJ") held a hearing. *See* Tr. 28–44. The hearing was attended by Ms. Parker, her attorney, and a vocational expert ("VE"). *See* Tr. 28.

On May 1, 2020, the ALJ issued an unfavorable decision denying Ms. Parker's claims. *See* Tr. 7–19. At step one, the ALJ found that Ms. Parker had not engaged in substantial gainful activity since January 26, 2018, her application date. *See* Tr. 12. At step two, the ALJ found that Ms. Parker had the following severe impairments: schizophrenia, depression, bipolar disorder, and anxiety disorder. *Id.* The ALJ found that Ms. Parker's thyroid disorder, obesity, and "physical impairments" were non-severe impairments. *Id.* at 12–13. At step three, the ALJ found that none of Ms. Parker's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 13–15. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Parker's RFC. *See* Tr. 15–18. The ALJ found Ms. Parker had the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: Applying the B criteria for the mental health issues and the four domains, [Ms. Parker] A) can understand, remember, and carry out detailed tasks and instructions; B) [she] can have occasional contact with the public, co-

---

[4] Documents 9-1 through 9-18 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

>   workers, and supervisors; C) work activity should be routine and repetitive; D) [she] can ask questions and or request assistance.

*See* Tr. 15. At step four, the ALJ found that Ms. Parker had no past relevant work. *See* Tr. 18. At step five, the ALJ determined that considering Ms. Parker's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy she could perform. *See* Tr. 18–19. Relying on the VE's testimony, the ALJ determined that Ms. Parker could perform occupations such as cleaner – housekeeper, retail marker, and laundry worker. *See* Tr. 19. Accordingly, the ALJ concluded Ms. Parker was not disabled within the meaning of the Social Security Act (the "Act"). *Id.*

Ms. Parker requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 184–86, 292–93. On January 20, 2021, the Appeals Council denied the request for review. *See* Tr. 1–3. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Parker filed her appeal to this Court on March 21, 2021.[5] *See* Dkt. 1.

### III. ANALYSIS

Ms. Parker raises two arguments in her briefing. First, she argues the ALJ erred at step two by failing to find that Ms. Parker's knee impairment was a severe impairment. *See* Dkt. 16 at 7–9. She further argues the ALJ erred in formulating her RFC by failing to account for the limiting effects of her knee impairment. *Id.* at 9. Second, Ms. Parker argues the ALJ failed to properly account for her moderate mental limitations. *See id.* at 9–12. The Court finds that remand is warranted because Ms. Parker's first argument is meritorious.[6]

---

[5] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 2.

[6] Because the Court finds that remand is warranted on the basis of Ms. Parker's first argument, the Court does not reach Ms. Parker's second argument.

At step two, the ALJ must consider whether any of the claimant's impairments are severe. *See* 20 C.F.R. § 416.920(a)(4)(ii). In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit described the threshold for a severe impairment.

> Phrased in the negative, an "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

*See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quoting *Stone*, 752 F.2d at 1101). "Re-stated, an impairment is severe if it is anything more than a slight abnormality that would not be expected to interfere with a claimant's ability to work. Th[e] second step [of the sequential evaluation process] requires the claimant to make a *de minimis* showing." *See Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (internal quotation marks and citation omitted). "ALJs are bound not just to use [the *Stone*] standard but also to cite it (or to an equivalent authority) in their written decisions; we presume that an ALJ applied the wrong severity standard if it does not." *See Keel*, 986 F.3d at 555 (citing *Stone*, 752 F.2d at 1106).

If the Court finds that a *Stone* error occurred, the Court must reverse and remand if the ALJ did not proceed past step two of the sequential evaluation process. *See Rollins v. Berryhill*, No. 7:17-cv-136, 2018 WL 2064781, at *5 (N.D. Tex. May 2, 2018) ("Automatic remand is only required in cases where the ALJ used the incorrect standard and did not proceed past step two."). If, however, the ALJ found at least one severe impairment at step two and proceeded to later steps of the sequential evaluation process, the Court applies harmless error review. *See Keel*, 986 F.3d at 556 (explaining that even if the Court "were to conclude that the ALJ failed to properly apply the *Stone* standard, such a conclusion does not require an automatic reversal—if the ALJ proceed[ed] past step two, we consider whether the error was harmless"); *see also Connie G. v. Berryhill*, No. 3:17-cv-3342, 2019 WL 1294441, at *4 (N.D. Tex. Mar. 21, 2019) ("[H]armless

6

error analysis is appropriate in deciding whether the ALJ's *Stone* error requires remand only in cases where the ALJ proceeds past step two in the sequential evaluation."); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (holding appellant's argument that the ALJ erred in failing to find her back problems severe was not grounds for a remand because the case did not implicate the "non-severity" of plaintiff's condition since the ALJ continued through step four of the sequential analysis); *Jones v. Bowen*, 829 F.2d 524, 527 n.1 (5th Cir. 1987) (holding no *Stone* error where the ALJ properly found the claimant's hypertension was mild and proceeded through step five, rather than denying benefits "prematurely . . . based on an improper determination of 'non-severity'"); *Herrera v. Astrue*, 406 F. App'x 899, 903 (5th Cir. 2010) (same). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel*, 986 F.3d at 556.

In this case, the ALJ did not specifically mention Ms. Parker's knee impairment in his step two analysis. *See* Tr. 12–13. Relying on the opinions of two state agency physicians, the ALJ, however, generally found that Ms. Parker's "physical impairments are non-severe." *See* Tr. 12. In addition, the ALJ noted the record showed Ms. Parker "continues to demonstrate 5/5 strength and normal range of motion." *See* Tr. 13. The ALJ also noted that Ms. Parker admitted "she is able to kneel, squat, bend, stoop, and stand for as long as she wants." *Id.* Ms. Parker disagrees with the ALJ's characterization of her medical records, and argues on appeal that the "record adequately supports the severity of [her] knee impairment." *See* Dkt. 16 at 7–8 (summarizing record evidence regarding knee impairment, including imaging studies and treatment Ms. Parker received at Comprehensive Orthopaedics and Rehabilitation). The Court need not determine whether the ALJ erred in his step two analysis because the ALJ found at least one severe impairment and proceeded to later steps in the sequential evaluation process. Thus, the Court applies harmless error review.

In so doing, the Court considers whether the ALJ addressed the impact of Ms. Parker's non-severe impairments, either singly or in combination with other conditions, at later steps of the sequential evaluation process, including when the ALJ formulated Ms. Parker's RFC. *See Williams v. Astrue*, No. 3:09-cv-103, 2010 WL 517590, at *8 (N.D. Tex. Feb. 11, 2010); *Milton L. C. v. Saul*, No. 1:20-cv-113, 2021 WL 3518532, at *10 (N.D. Tex. July 23, 2021), *R. & R. adopted*, 2021 WL 3516244 (N.D. Tex. Aug. 10, 2021) ("[H]ere, the ALJ did reference all of Plaintiff's alleged impairments, as well as Plaintiff's additional symptoms, in the RFC discussion. Thus, even assuming the ALJ made an error in the step two severity discussion, there is no ground for reversal because the ALJ proceeded beyond step two in the sequential analysis in discussing all of Plaintiff's impairments." (internal citation and quotation marks omitted)); *Corbezzolo v. Wiley*, No. 4:20-cv-2150, 2021 WL 2673077, at *5 (S.D. Tex. June 29, 2021) ("[T]he question is whether [the] ALJ could have reached a different conclusion. Here, because the ALJ considered all of Plaintiff's impairments, severe and non-severe, in formulating the Plaintiff's RFC[,] any step two error was harmless.").

Here, although the ALJ proceeded to later steps in the sequential evaluation process, the ALJ did not address Ms. Parker's knee impairment in those steps. In fact, the ALJ's RFC discussion focused entirely on Ms. Parker's mental impairments. *See* Tr. 15–18. The Commissioner argues that the absence of any discussion of Ms. Parker's physical impairments in the RFC analysis necessarily means the ALJ found that Ms. Parker's physical impairments, including her knee impairment, did not result in any functional limitation on her ability to work. *See* Dkt. 17 at 5–7. The problem with this argument is that the Commissioner is asking the Court to draw assumptions and fill in gaps in an otherwise incomplete RFC analysis. Although the ALJ considered Ms. Parker's statement regarding her physical capabilities, as well as the opinions of

8

the two state agency physicians at step two, the ALJ's analysis at step two was limited to whether Ms. Parker's physical impairments were severe impairments. No subsequent analysis was undertaken to address whether Ms. Parker's physical impairments, despite their non-severity, resulted in any work-related functional limitations.

At no point in his RFC analysis did the ALJ address Ms. Parker's imaging studies or her orthopedic treatment records. The imaging studies revealed a number of left knee issues, including tricompartmental osteoarthritis, tendinopathy, moderate knee joint effusion with synovitis, anterior knee soft tissue edema, mild-to-moderate ACL myxoid degeneration, infrapatellar plica injury, lateral meniscus posterior horn degeneration, low-grade subacute superficial MCL and medial knee capsular sprain, and a complex medial meniscus flap tear. *See* Tr. 800–01. The orthopedic treatment records included diagnoses for left knee osteoarthritis and arthritis, with Ms. Parker's treating orthopedic physician noting swelling, tenderness, and limited range of motion in the left knee upon physical examination. *See* Tr. 727–28. Ms. Parker's treating provider indicated that Ms. Parker would eventually need a total knee replacement. *See* Tr. 356. Although Ms. Parker reported to consultative examiner Dr. Farida Valliani, M.D., in April 2018 that she could kneel, squat, bend, stoop, push and pull without issues, Ms. Parker reported months later in her function report that arthritis made squatting and kneeling very painful, and that she was using crutches and a knee wrap since June 2018. *See* Tr. 270–71. The ALJ's RFC analysis did not address the foregoing objective or subjective evidence concerning the alleged intensity, persistence, or limiting effects of Ms. Parker's left knee issues. It is not the role of the Court to weigh this evidence in the first instance. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (citing *Copeland v. Calvin*, 771 F.3d 920, 923 (5th Cir. 2014) ("We may affirm only on the grounds that the Commissioner

9

stated for his decision."); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) ("We may not reweigh the evidence or substitute our judgment for that of the Commissioner.")).

Thus, the Court finds the ALJ committed harmful error by failing to consider Ms. Parker's alleged functional limitations related to her knee impairment when he formulated her RFC. The Court must, therefore, remand this case for further administrative analysis to determine the effect, if any, that Ms. Parker's knee impairment had on her RFC. *See Milton L.C.*, 2021 WL 3518532, at *10 (emphasizing that even where an impairment is found to be non-severe at step two, the "ALJ must still consider the impact of [any] non-severe impairments—either singly or in combination with other conditions—when he determines [the claimant's] RFC." (internal citation omitted)). This is not to say that the ALJ may not reach the same result on remand; however, without the correct application of law and analysis, the Court cannot say that Ms. Parker's RFC should not include limitations arising from her knee impairment.

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been

served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 9th day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE